UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

DEANGELO JEROME DOWNS,

    Plaintiff,

v.                                                    Case No. 5:16-cv-466-Oc-40PRL

UNITED STATES OF AMERICA,

    Defendant.

## ORDER

Plaintiff, a federal inmate acting *pro se*, initiated this case by filing a civil rights complaint alleging constitutional violations[1] by individual federal actors in connection with an injury to his left Achilles tendon. (Doc. 1.) The defendants moved to dismiss (Doc. 24), and their motion was granted without prejudice to any claim Plaintiff may have under the Federal Tort Claims Act (FTCA) for medical malpractice. (Doc. 31); 28 U.S.C. §§ 2671, 1346(b).

The United States was added as a party on January 25, 2018 and filed its Answer on March 26, 2018. (Doc. 37.) After a period of discovery, the United States moved for summary judgment. (Doc. 43.) Plaintiff filed his response in opposition on February 12, 2019. (Doc. 50.) This matter is ripe for review. For the reasons discussed below, the United States' Motion for Summary Judgment (Doc. 43) is due to be granted.

---

[1] *See Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) (authorizing suits against individual federal officials).

## A. Plaintiff's Complaint

Plaintiff alleges that on April 26, 2014, while incarcerated at the Coleman Federal Correctional Complex, United States Penitentiary I, he was playing basketball when he injured his left Achilles tendon. He reported to medical but was told to come back the following day. (Doc. 1 at ¶ 14.) Plaintiff reported to medical the next day and told Nurse Crystal Harris that he heard a pop near his left ankle and that he was still in pain. His lower left leg was swollen. (*Id.* at ¶ 15.) Nurse Harris requested an x-ray and told Plaintiff to rest his left ankle, ice it at night, bandage it for compression, and to elevate it at night to reduce swelling. Plaintiff was issued crutches. (*Id.* ¶ 18.)

On April 29, 2014, Plaintiff returned to the medical department and was seen by a Mid-Level Practitioner. MLP Chipi told Plaintiff it appeared he had twisted his ankle; Plaintiff told him it was not in his ankle, the pain was too great. (*Id.* at ¶ 19.) A May 8, 2014, radiology report stated that Plaintiff had swelling in his left ankle and a tender Achilles. (*Id.* at ¶ 20.) On May 30, 2014, Plaintiff reported to sick call and complained that his lower leg was very painful, his left foot swollen, and his left heel was numb. (*Id.* at ¶ 21.)

On June 19, 2014, Plaintiff saw Dr. Alex Seda, complaining of pain in his Achillles tendon and numbness in his heel. Dr. Seda assessed the injury as Achilles bursitis or tendonitis and prescribed naproxen. Dr. Seda also told Plaintiff he would request an ultrasound. (*Id.* at ¶ 22.) On June 25, 2014, an ultrasound showed that Plaintiff had a soft tissue mass on his left ankle consistent with a ruptured Achilles tendon. An MRI and/or

surgical evaluation was suggested.  (*Id.* at ¶ 24.)  Plaintiff received his MRI on July 30, 2014, showing a distal Achilles tendon rupture with a 4-centimeter gap between the frayed ends.  (*Id.* at ¶¶ 25-26.)

On August 20, 2014, Plaintiff saw Dr. Miguel Cintron at Coleman and requested surgery.  Dr. Cintron told him surgery was not needed.  (*Id.* at ¶ 28.)  Plaintiff saw MLP Chipi on August 27, 2014, September 12, 2014, and October 9, 2014, each time complaining of pain and requesting surgery.  (*Id.* at ¶¶ 29-32.)

By February 27, 2015, Plaintiff had been transferred to Beaumont USP, where he saw Dr. Sreedhar Palavarapu, who referred Plaintiff to a physical therapist.  (*Id.* at ¶¶ 33-34.)  After six weeks of physical therapy, he met some but not all goals set at his initial evaluation.  (*Id.* at ¶¶ 35-36.)  Plaintiff was eventually referred to an orthopedic surgeon.  On August 25, 2015, Beaumont Bone and Joint evaluated Plaintiff and noted that because of the time that had passed since the injury (1-1.5 years), there were no surgical interventions that would be possible.  The distance between the frayed ends was too great, and Plaintiff exhibited substantial atrophy of his calf muscle.  (*Id.* at ¶ 39.)

For relief, Plaintiff seeks compensatory and punitive damages, as well as costs.  (*Id.* at ¶¶ 48-53.)

### B.  Standard of Review

Pursuant to the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on

file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists where the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). In applying the standard for summary judgment, the Court must review all of the evidence "in the light most favorable to the nonmoving party." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must go "beyond the pleadings, [and show] that there exist genuine issues of material fact." *Anderson*, 477 U.S. at 249.

### C. United States' Motion for Summary Judgment (Doc. 43)

The United States has moved, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment in its favor. The United States contends that summary judgment is appropriate because the undisputed material facts show that Plaintiff has failed to retain a medical expert to offer standard of care opinions as required by Florida law in a medical malpractice case. In support of its motion, the United States attaches Plaintiff's responses to interrogatories, wherein he lists partial identifying and contact information for four expert witnesses (three physicians and one physical therapist who treated Plaintiff) but fails to identify what opinions they will offer, what contact he has had with them about offering their opinions, what they charge for their expert opinions, or to what their educational and work backgrounds are. (Doc. 43, Exh. 2, pp. 10-11.)

In his response, Plaintiff writes: "To survive the Government's motion for summary judgment, Plaintiff points to the doctor he was sent to by the Federal Bureau of Prisons while at USP Beaumont, who, on or about 25 August 2015 (over a year after the initial injury) determined that there were no 'surgical interventions' he could recommend due to the passage of time since the rupture." (Doc. 50, p. 5.) He does not attach the medical record, nor does he attach any affidavit or otherwise indicate that he has contacted that physician regarding his potential expert opinion in this case.

### D. Discussion

Plaintiff's medical malpractice claim pursuant to the FTCA is governed by Florida law, as he alleges that medical providers at FCC Coleman, located in Florida, were negligent. *See* 28 U.S.C. § 1346(b)(1) (liability under the FTCA for "personal injury caused by the negligent or wrongful act or omission of any employee of the Government" is determined "in accordance with the law of the place where the act or omission occurred.") In order to prove medical malpractice in Florida, "the claimant shall have the burden of proving by the greater weight of evidence that the alleged actions of the health care provider represented a breach of the prevailing professional standard of care for that health care provider." Fla. Stat. § 766.102(1). Generally, the standard of care in medical malpractice cases is established through expert testimony. *Pate v. Threlkel*, 661 So. 2d 278, 281 (Fla. 1995); *Torres v. Sullivan*, 903 So. 2d 1064, 1068 (Fla. 2d DCA 2005).

In response to the motion for summary judgment, Plaintiff has offered no expert testimony as to the prevailing professional standard of care, and only points to one

medical record regarding his injury. This medical record (which is not even attached to the response) is not sufficient to establish the standard of care for the medical providers at Coleman, or that the providers breached the standard of care. Plaintiff's own conclusory allegations as to what that medical record means in the context of the standard of care are not enough to support his claim.

Accordingly, because Plaintiff has not supported each element of his medical malpractice claim with expert testimony, the United States is entitled to summary judgment. *See Lambert v. United States*, 198 Fed. Appx. 835, 839 (11th Cir. 2006) (affirming district court's dismissal of FTCA medical malpractice claim where plaintiff did not submit expert medical testimony prior to trial); *Rushing v. United States*, 288 Fed. Appx. 616, 620 (11th Cir. 2008) (affirming a grant of summary judgment where plaintiff did not prove his FTCA medical malpractice claim through the use of expert testimony); *Moore v. Guzman*, 362 Fed. Appx. 50, 54 (11th Cir. 2010) (same); *Cagle v. United States*, 738 Fed. Appx. 633, 639-40 (11th Cir. 2018) (same).[2]

### E. Conclusion

---

[2] Unpublished opinions of the court of appeals are not binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2 and I.O.P. 7; Fed. R. App. P. 32.1.

It is hereby **ORDERED** that the United States' Motion for Summary Judgment (Doc. 43) is **GRANTED**. The **Clerk** is directed to enter judgment in favor of the Defendant, terminate any pending motions, and close the case.

**IT IS SO ORDERED.**

**DONE AND ORDERED** at Ocala, Florida, this 27th day of September 2019.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record
Unrepresented Parties
SA: OCAP-2